All right, our third case this morning is number 19-13482, Joel Lucoff v. Navient Solutions, LLC. Mr. Taylor, whenever you're ready. Okay, so Mr. Lucoff, if you can do that and join us, whenever you're ready, you may begin. Thank you. Thank you, and may it please the court. Jonathan Taylor for the plaintiff appellant, Joel Lucoff. The question at the heart of this When Navient got off the phone with Lucoff in 2014, did it know, or should it have known, that he did not want to receive robocalls about his student loans? It is Navient's burden to show that the answer is no, and that no reasonable juror could find differently. Navient cannot carry its burden. During the call, Navient told, Lucoff told Navient's customer service representative in the most expressed language imaginable, that he did not consent to receiving robocalls. Multiple times he said no in response to direct questions about whether he consented. That should be the end of the matter. Now, Navient makes two arguments in response, and if I may, I'd like to take them in turn. Navient's lead argument is that it didn't have to comply with Lucoff's request, because he had forever relinquished his right to stop robocalls. Navient argues that because he was one of eight million people who were part of a private class action settlement years before, and he didn't respond to a mass email about the settlement that he never saw or read, that that constitutes, that silence, constituted not just express consent to receive calls in the future, as required by the statutory text of the Telephone Consumer Protection Act, but irrevocable express consent, forever waiving his statutory right to revoke. That argument is wrong for four independent reasons. Number one, doing nothing in response to a mass email is not express consent. It is at best implied consent, and the TCPA requires prior express consent. Number two, even setting aside- This is Lisa Branch. Mr. Taylor, how do you distinguish your case from this court's recent decision in Medley v. Dish Network, where our court said that there is no unilateral revocation of consent in a bargain for a contract? Right. I think there are two key distinctions, and the first is that that case, which adopts the reasoning of the Second Circuit's decision in Reyes, which we discussed in our brief, those cases hold only that the TCPA prohibits revocation when consent was given as bargain for consideration in a bilateral contract, based on the principle, the foundational principle of mutual assent. But that common law rationale has no application in class action. And then the second point I would make is that the consumers in those cases affirmatively agreed to contract terms that both constituted express consent and set forth the conditions under which that consent would continue as part of an ongoing bargain for relationship between the parties. Not so here. Lukoff said and did nothing. The settlement has no analogous language nor any limiting conditions like those in this court's decision in Medley or in Reyes. And there's no indication that a silent waiver of revocation rights was a bargain for term. The ability to revoke to the contrary was seen as a benefit given to class members, not a right that they already have. And so this is really the second point that I wanted to make, which is that even setting aside the fact that the statute doesn't authorize implied consent, but instead requires express consent, the settlement here did not even purport to waive absent class members statutory right to revoke consent in the future, much less do so forever. It said only that if they did nothing, they would be, quote, deemed to have provided prior express consent to receive calls so that after the settlement date, the calls would not stop. And the only claims that were released by the settlement are those that existed as of the date of the final approval, which was long before the claims here arose. And so the third kind of fatal problem with Nabihan's argument here is that the settlement expressly provides that the FCC rules would govern. And in 2015, the FCC made clear that there's a statutory right to revoke consent and the manner of revocation can't be limited. And so that rule governs. And then the final point is that, and I don't think this panel has to get that far, but I do think it's an important point to make, which is that if you were to construe the settlement to forever waive future statutory rights, that would raise grave constitutional concerns under the due process clause in Article III. Class actions are generally permissible under Rule 23 and consistent with Article III's limitations on federal court jurisdiction because they are representative adjudication of existing cognizable claims. And settlements of those claims are permissible with court approval under Rule 23. And this procedure complies with constitutional due process as long as there's clear notice and opt-out rights are provided. But Nabihan's argument is very different. It contends that class action settlements may be used to extract irreversible prospective waivers of absent class members' personal statutory rights with respect to future events and claims that do not exist at the time of the settlement and are not covered by the release, all without saying so explicitly in the class notice. That is not sanctioned by Rule 23. Can I ask you to pivot for a second to the second large issue in the case is whether Mr. Lukoff reconsented when he signed up for the auto debit payments? Happy to, Judge Jordan. And I think your opinion for the court in Schweitzer kind of points the way on this issue. And this second argument is less sweeping, but it's no more plausible. So a few minutes after Lukoff expressly revoked consent orally, and while he was still on the phone call, a pop-up appeared on his computer screen as he was navigating the website at the direction of Nabihan's representative. It asked if his contact information was up to date and said, if no changes are needed, please click submit. No changes were needed. He clicked submit. And Nabihan now argues that by doing so, because of some fine print at the bottom of the screen, Lukoff signaled his unambiguous desire to receive robocalls, notwithstanding his express oral statement to the contrary mere minutes before. That is mistaken. Under this court's cases, and I mentioned Schweitzer, and I do think that's the governing precedent here, consent ends when the actor knows or has reason to know that the consumer is no longer willing to receive calls. I know, but as a matter of timing, although the interval was probably relatively short, the signing up for the auto pay feature took place after the telephone call with the representative in which Mr. Lukoff said that he no longer wanted to be called by an auto dial system. Well, to be clear, it took place during the call. I mean, they were almost simultaneous. Counsel, two minutes, please. I'll try to quickly respond. They were almost simultaneous. Take your time. Take your time. And, you know, I think just there's kind of a legal, there's a factual predicate of your question that I just wanted to take issue with briefly, which is that, you know, the consent happened, the consent, or what Nabihan is calling his re-consent happened a few minutes after he said that he revoked his consent orally during the phone call. And what was happening is that he was navigating the website at the direction of the customer service representative trying to locate the auto debit form while he was in the middle of doing that while still on the call. This pop-up appeared and he basically just tried to click through so he could get to the thing he was trying to accomplish. And, you know, then the kind of the legal response to your point, which is that, look, this is a factual question that is to be assessed under the totality of the circumstances. This court's cases make that clear. And the FCC's order in 2015, likewise, made clear that questions of consent and revocation depend on the totality of the facts and circumstances surrounding the specific situation. And so the question then is whether Nabi knew or should have known based on the totality of the circumstances, whether the call, when the call was over, that Lukasz did not want to receive robocalls about his student loans. And the answer to that question is yes. Mr. Taylor, I guess the problem that I have with the argument that you just made is let's just assume for the sake of argument that the timing had been reversed, that he had initially filled out this form at the beginning of the call. And then when the agent asked if he would consent to being called, he had expressly said no. I don't think he would be sitting here arguing that the totality of the circumstances, that this is a factual dispute that needs to go to a jury. You would say it was very clear. It came after the written form. He said it verbally. He said, no, don't call me. And so why is it any different here? Well, I think that you're right that in that case, it would be crystal clear because in addition to all the other factors that we point to, you would also have the sequencing factor be a factor that cuts in our favor. And so there really would be no ground on which Navient could stand in that scenario. But this scenario is a little bit different. Now we think our position is, our lead position is that we're entitled to summary judgment as a matter of law, not Navient, because no reasonable juror would look at this phone call in the context of the Lukoff clicking submit and think that when that call was over, Navient knew or should have known that Lukoff actually desired to be called using auto-dialed equipment. But at a minimum, I think there is enough in the record to allow that question to go to a jury because some factors point in one direction. You mentioned the order. And I think that is a factor that points in Navient's favor on this. But other factors, all the other factors point in the opposite direction. And I'll just list three if I may. Mr. Taylor, let me just ask a point of clarification based on something you just said. You are entitled to summary judgment on this issue, but there are factual disputes that should go to a jury. I guess I'm, which argument are you making? Well, I mean, I'm not, I don't, I think our position is that even if you looked at the record and construed any, you know, construed the facts, any disputed facts in Navient's favor, I think it's a reasonable juror, any reasonable juror looking at this transcript and the context of an action would think it's pretty clear at the end of that call that Joel at a minimum, there are competing inferences that can be drawn based on that interaction. And those inferences of this court made clear in Schweitzer are really the province of the jury. And I'll just point out a few of them that I think are, you know, taken together are enough. Number one, of course, is that Lukoff's clicking submit was immediately preceded by explicit, unambiguous, repeated oral revocation. Navient's position is that is irrelevant. Our position is that it matters. Number two, the pop-up appeared while Lukoff was navigating the website at the direction of Navient's representative. And there's no indication that Lukoff changed his mind. And we don't even know if the revocation had been entered yet, had been updated yet by Navient's customer service representative. And then finally, the pop-up was misleading and far from clear. It was prefilled. And it said, if no changes are needed, please click submit. And that suggests that the status quo would be preserved. Nothing would change. And so I think that... Didn't Mr. Lukoff acknowledge that he had read the so-called fine print about filling out the form amounting to consent to be called? No. I think what he said is he saw it on the... I think he saw the submit button on the screen. He saw that his telephone number was there. But there's no evidence that he read it, understood it, and intended to consent. And the legal question, in any event, is what Navient knew or should have known. And so the question then is when Navient, if you ask that customer service representative when that call was over, do you have Lukoff's consent to call him using robocalls? I don't think anyone would doubt that their answer would be no. Or at the very least, their answer should have been known and a jury could find reasonably that they should have known. If there are no further questions, I'll reserve the last little bit of my time for rebuttal. We took you beyond your time, so you've got your full time for rebuttal. Thank you, Judge Ordon. Okay, Ms. Fernandez. Your Honors, may it please the court, Barbara Fernandez for the appellees. The appellees request this court to affirm the district court's order based on several factors. The undisputed facts of this case unequivocally prove that Lukoff's own actions provided prior consent to NSL on two separate occasions. First, in 2012 when he became a class member to the Arthur Class Settlement. And second, in June 2014, when he submitted his cell phone number through NSL's website, along with written consent to be called at that number. Those are the undisputed facts that Lukoff cannot escape and the trial court correctly applied the law to those facts. Can I take you to the first issue? I have one concern with your first argument and the district court's first ground, and that is this. When are class action settlements construed to preclude any claims for future torts or future statutory violations? I mean, if this were a case involving something other than the TCPA, I don't think any court would allow a class member to give up the ability to sue for a future tort which was not contemplated and had not yet occurred. But essentially, that's what you're saying happened here, that for time infinitum, that Mr. Lukoff gave up his right to complain about anything that Navien may have done in violation of the TCPA with respect to auto-dialed calls. And that just seems very, very odd to me. Your Honor, that's not exactly what we're saying. What we're saying is the following, and it falls along the lines with the reasoning in Medley. We're not saying that Lukoff waived any statutory rights or any future claims. What we're saying is that Lukoff, as becoming part of the class, provided his prior express consent just like Medley did in the contract. We have to see this class settlement agreement as any other consumer contract wherein there was a bargain for term within the settlement agreement that stated that by failure to opt out, failure to revoke your consent, you have now provided consent in regards to your account with this company. This is not a forever waiver of statutory rights. In fact, had Lukoff or any other class member provided a revocation on Navien called them, then they have a new claim against NSL because now they have quote-unquote possibly violated the TCPA because they've called with a revocation already in place. I know, but you're saying that if they did not opt out or object, not only did they provide prior consent because of the Arthur settlement, that consent continued into the future and was essentially irrevocable. Is that not your position? That falls along the lines with Medley, which is, for instance, the consumer in Medley may not have known when they filled out that application that consent was a bargain for term of that contract, but they could not unilaterally revoke that consent because it was a consideration of that and approved by a judge. It was to effectuate that anyone who did not revoke their consent had provided prior expressed consent. And also most, if not all of the members already in this class had provided consent prior to the class settlement in some form. For instance, in Lukoff, the record shows that in 2012, he had already provided his phone number, which Lukoff did not reinforce that they have provided prior expressed consent unless they made the option of revoking that consent, which was provided for as consideration within the settlement agreement. No member of the Arthur class could have later tried to tell Navient that they didn't want to call through an auto-dial system. Right? Only because it's part of a contract. No, I'm not asking you for the reason why. I'm asking you if that's your position. Your position is, and it might be right, your position is that if you were part of the Arthur class and were bound by the settlement and you did not submit a revocation request, you could never do it in the future. Right? That consent was unilaterally unable to be revoked because you were bound by that contract. Yes, under the reasoning of Medley and under the common law principles of consent. Twenty-five years from now, when you become older and are really bothered by phone calls, you couldn't call Navient and tell them, listen, I've now changed my mind. I don't want to be called by this auto-dial system anymore. That consent follows you to your grave. Right? It doesn't necessarily follow you to your grave because the prior express consent that's provided within the agreement states that it's concerning your account. So at one point, whether you bring your account... No, you've got a massive student loan that you're going to be paying off for 20 or 30 years. And 25 years from now, you don't want to be called by an auto-dial system anymore. So your position is, and again, it might be right legally, but your position is that as long as your account remains active, if you were an Arthur class member who did not opt out, did not object, and did not submit a revocation form, your consent follows you to the grave. Right? Yes, Your Honor. Under the basis of Medley, yes. Okay. Counsel, you just reminded me of a question. It can't be unilaterally revoked. If there was some, for some reason, if Navient agreed to the revocation, then that would be possible too. Right? That's correct, Your Honor. The position is that it cannot be unilaterally revoked because of the fact that it is part of a bargain for contract. That's correct, Your Honor. And if you were to transfer your student loan to another entity or otherwise pay it off, then the, this issue would no longer exist. Correct? Correct. Presumably the prior express consent that was given through the contract for basis of this account with this individual company would then therefore not be valid anymore. That's correct, Your Honor. But don't they buy your account and all that comes with it? Well, Your Honor, the way the agreement and the consent of the class is structured, it talks about Sallie Mae affiliates, subsidiaries, including Navient. How that's applied, if some company were to buy it, there could be a different analysis to that based on the contract not being with the party that comes afterwards that would possibly buy a loan. Although these loans are usually serviced by the same company, especially federal loans like Mr. Lukoff's. But if you sell to another Sallie Mae agency, then you're stuck with that consent, right? Based on the language of the consent, because it refers to other affiliates and subsidiaries of Sallie Mae, that is correct. Okay. Let's talk about the second issue then, if you could, Ms. Fernandez, and that is what happened factually during and after the call with the Navient representative and what that leads to, in your opinion? Yes, Your Honor. Again, we're dealing with undisputed facts, which as the court knows, was that during the phone call, Mr. Lukoff was asked whether he accepted calls using automated means. He said no. And after that, he goes on the website at his direction. I know that the appellant says that it was at the representative's direction, but that's not entirely true. If you read the transcript, the representative tells him that he can go on to the website and it is Mr. Lukoff who at the moment says, okay, let me do this right now. And he starts going on the website with the agent on call at his own discretion, not at the direction of the representative. And as he's on the website, he goes through the website and he, within the trial record, it is undisputed that he not only saw his phone number, he saw the consent language, and he submitted that consent language, and he clicked also the section of the website that says, I have read all the conditions and I understand. We also have to point out, your honors, that this is a consumer lawyer who is very familiar with the TCPA because it's what he does for a living. And as a lawyer, you understand what you are agreeing to when you read language such as I consent that this phone number that I have provided, I will be called so on and so forth. And when you read a term that says I've website, you've also, you're bound. So the situation here is that the, his online consent came after his verbal no. I understand that appellant is trying to argue that Navient knew or should have known that because he said no, and then afterwards said yes, that we should know that he meant no, but that's not the case. And I understand that Schweitzer is a case of being used by appellant, but Schweitzer is distinguishable here because in Schweitzer, we were dealing with a statement by the consumer that was somewhat ambiguous. It wasn't clear exactly what was meant, whether the consumer is trying to partially revoke consent or not. Schweitzer and the line of cases cited therein all dealt with vague and ambiguous statements. Here, we're dealing with a yes and then a no. So if we're going to go off the basis of what NSL could have known or should have known, the only reasoning, which is what the court determined is that after the no, he submitted yes. And more importantly, after he submitted the yes in writing online that he saw, Mr. Lukoff never once reached out to Navient thereafter to say, I made a mistake. That online consent was unintentional. That's not what I meant to do. So if we're going to go off of what a company should have known, how could the company know that his yes that came after the no was a mistake and was unintentional? Lukoff could have changed his mind. Another situation is that there's no evidence in the He could have deleted it. He could have put any number he wanted. The representative had no knowledge of that. There's zero evidence in the record to suggest that there was any indication that the company, Navient, should have known that this yes, this online written express consent that came after he said no was a mistake and was unintentional. So it was Lukoff's own actions that provided this reconsent. And I think Lawrence is a case that's very persuasive and compelling because it deals with such situations of reconsent, which is in Lawrence, the 11th Circuit looked at a situation where a consumer revoked consent and then later on started providing letters with his phone number on it. And that was considered reconsent because we have to see what the company, what the actions of the consumer appeared to the company. And if the yes comes after the no, then the only automated, and again, I should say this is an automated process, the only indication and the only determination that a company could make is that he provided a yes. And I know that... Counsel, two minutes, please. Thank you. Ms. Hernandez, this is Jill Pryor. Let me ask you a question. So it sounds to me like you're, and maybe I'm misunderstanding, but it sounds like your argument has boiled down to the timing. In other words, because the yes came after the no, that's the end of story. Is that correct? What if it's one second later, you would still say the yes came after the no, and so therefore he consented. Is that right? Yes, Your Honor, because of the fact that it is an automated system and it's whatever comes afterwards. In fact, like I said, if Mr. Lukoff would have right after the yes said, gone back into the website and said no and taken off his cell phone, then it would have been switched to no. Let me ask you a hypothetical. Let's suppose that he hit submit at the exact moment when he said, no, you can't call me. Would there be a fact question there? I'm sorry, could you repeat your question? I didn't follow. Yes, I'm trying to take the timing issue out of it, and let's suppose that he clicked submit at the exact moment when he was telling the person on the telephone, no, you can't call me. Would there be a fact question there about what was intended, whether he reconsented or not? Right, well, like I said, the rep doesn't necessarily know what Lukoff is entering within the website. Well, but the company does. Right, the company will have... Correct. So it would have been absolutely simultaneous. If it was simultaneous, I would have to believe that it's however it came onto the company system. And what I was going to point out is that appellant argues that the record doesn't show whether the representative actually changed or updated his no, but that's not true. The record shows, and it's on the corporate representative's Sheryl Highfield's affidavit in Docket Entry 23-1, which is that when the pop-up came up to ask the question as to whether Mr. Lukoff wanted to accept calls or not, that pop-up needed to be updated in order to continue to access the account, which is what the record shows. So it was switched to no at the point that Mr. Lukoff said no, and then what came afterwards was this electronic express consent in writing to the company. So the yes came afterwards. And therefore, it could have been automatically changed back to no had Mr. Lukoff then thereafter said no. So the simultaneous, I wouldn't know exactly, Your Honor, except that it would be based on the timing of how it came to the company. And again, like I said, if we're going to go off the basis of what Navient should have known, then I think there's no doubt that based on the undisputed facts of the record, which is that he said no, but then he said yes, and more importantly, never advised the company that his online consent was unintentional. Two thousand calls after that, never once, and this is also undisputed, did Mr. Lukoff call the company, call Navient and say, I did not mean to submit my consent. That was unintentional. So what would a company know or should have known? They should have known and believed that based on the facts of what occurred during that call and thereafter, and four years after, is that Mr. Lukoff had in fact provided consent, just as in Lawrence, which is what is apparent to the company is what is important. Your words, your conduct, and your actions, whether you meant to or not, provide consent. Similar to the cases such as Mays, Murphy, Edelberg, I'm sure in all those instances where consumers might have put their phone number in a medical application or a credit application or some sort of form, they may not have meant to provide consent when they did that, but the FCC and the Eleventh Circuit have all said that provision of your cell phone number alone, a voluntary provision of that cell phone number is consent. So under the totality of the circumstances that we're dealing with here, which the appellant wants us to look at, and the court did look at, the totality of the circumstances in this case, and as the record stands in this case, is that after he said no, he provided his phone number, and not only did he provide his phone number, he provided it with written, unambiguous consent, and this, like I said, is a consumer lawyer who, above all, should have understood what he was doing. Okay, Ms. Fernandez, anything else? No, Your Honor. All right, thank you very much, then. Thank you. Mr. Taylor, you've reserved your time for rebuttal. Thank you very much, and may it please the Court, I've got just five minutes for rebuttal, and there's a lot to respond to, so I'm going to try to pack as much as I can in. But just beginning with the class action issue, so Judge Jordan, you opened by saying that future claims are generally, may generally not be bound up in a class action settlement under basic principles of Rule 23 and due process in Article 3, unless, perhaps, if they're based on the same predicate fact, to which my friend on the other side responded by saying that she's not saying, quote, that he waived his statutory rights. Well, if that's true, then that's fatal to their first argument, because if he continues to have his statutory right to revoke, then he continues to have the ability to exercise it. And I know this Court sees its fair share of PCPA cases and might not think much of it, but it's a statute that Congress enacted. There is no PCPA exception to Rule 23, due process clause, Article 3, common law consent. And let's not forget that this is an exception to a rule. Number two, my friend on the other side says that this is, quote, like any other consumer contract, and so it's on all fours with Medley. But that simply is not true. As I pointed out earlier, this is a class action context. And the reason why class action judgments are given binding effect is because they are approved for settlement under Rule 23. It's not because of common law contract principles. And the idea of representative litigation only goes so far. It does not extend beyond claims over which there's no Article 3 jurisdiction. My friend also said there's no limitation in the scope of the consent that was provided here as a constructive matter by the class action settlement. That's not true. If you go to 23-3 at page 19 in the appendix, there is no limitation on the consent that is provided. It does not say concerning your account. And so I think it would be particularly problematic to allow, to basically give the defendant, because it violated the TCPA, something it wouldn't otherwise have. And now if I may just quickly pivot to the kind of the pop-up question that you all were discussing at the end there. A couple of points here. So my friend says that Schweitzer, in the brief, they said that Schweitzer is not the test. Now they say it's distinguishable because the oral statements that were made in Schweitzer were vague, whereas here they're clear. But that's backwards. I mean, these statements are crystal clear. And the question is whether the clicking of submit a few minutes later somehow completely undoes and nullifies the preexisting clear revocation. That's a different question. And they say he may have changed his mind. But frankly, that is not a plausible reading of the record. Now they make the argument that, look, all that matters is the sequencing. And to the extent that it's simultaneous, then you basically defer to the defendant and it's however their system is structured. And that is just not correct as a matter of law. If you look to the Fourth Amendment context, which I think is analogous here when it comes to questions of consent, even if you say, no, I don't consent, no, I don't consent, and then there's arguably some affirmative consent that is given after that, it is still a totality of the circumstances test as to whether the consent was voluntary. You wouldn't just look at a freeze frame of the person saying, I give consent and ignore the context. That would take a totality of the circumstances test that is supposed to be for the jury and turn it into a one-factor test that just looks at sequencing. And with respect, that's not the way that it's done. My friend makes a number of arguments about why it was reasonable for an aviant to do what it did. With respect, those are jury arguments. And she says here that we know that the revocation had been put into the system because that's what triggered the pop-up, which just goes to show you that this is a game. I mean, this is something that is supposed to be an exception to the statute. And apparently what triggered the pop-up saying merely that they wanted to update his consumer information, if there's no update, click submit, what triggered that is because he had apparently clearly revoked his consent. And finally, I just want to respond to Lawrence. Mr. Taylor, one question on the pop-up form. It is correct, though, that Mr. Mukauf never revoked the online, this never revoked consent after submitting this online form, correct? That is correct. Now, just four points on that. I mean, that isn't relevant to the legal question in this appeal. The statute requires prior express consent. And even if it could be said that inaction in the face of repeated violations of the statute at some later event could be construed as consent, that's neither prior consent nor express consent. I'll also say that it can be hard to know when you receive a call whether it was made using an auto dialer. So you might not immediately think that your request to revoke your consent has not been honored. And I would also say that it would be exceedingly perverse to create a legal regime in which those who violate the statute hundreds or even thousands of times would somehow be better off than those who violated it just a couple of times. I mean, at most, it's relevant in the way the kind of post-enactment legislative history would be relevant, which is to say not very much at all. And it's for the jury to weigh under the totality of the circumstances test. And just the last final thing I'll say, just with respect to Lawrence, Lawrence is an unpublished decision, excuse me, an unpublished decision that ignores the word express and instead relies on a 1992 FCC order that the appellee in this case does not rely on. And that order says only that, quote, absent instructions to the contrary, the provision of a number to a creditor tends to serve as sufficient evidence of a desire to be called on that number. But even if that were the question here, Lukoff didn't provide the number, Navient already had it, and it was immediately preceded by express oral limitations to the contrary. And so the context in Lawrence was very different than the context here. There was not near simultaneous oral revocation and the plaintiff affirmatively mailed a letter inviting the caller to call him on his cell phone. Moreover, and this is the last point I'll make, the court in Lawrence, if you look at footnote six, agreed that the context of consent matters to the TCPA. And so you have to look at the context and that question here is for the jury. If there are no further questions, thank you very much. All right, Mr. Taylor, Ms. Fernandez, thank you both very much. Thank you.